UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
West Palm Beach Division

In re:                                                    CASE NO. 07-10474-SHF
                                                          CHAPTER 11
99 CENT STUFF, INC.,

     Debtor.

_____/

## NOTICE OF FILING PLAN TRUST AGREEMENT

Notice is hereby given of the filing of the attached Plan Trust Agreement.

## ATTORNEY CERTIFICATION

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

Respectfully submitted,

**AKERMAN SENTERFITT**
**The Official Committee of Unsecured Creditors**
**Of 99 Cent Stuff, Inc.**
Las Olas Centre II, Suite 1600
350 East Las Olas Boulevard
Fort Lauderdale, FL  33301-2229
Phone:  (954) 463-2700
Fax:  (954) 463-2224
Email:  phil.landau@akerman.com


By: /s/  Philip J. Landau
    Philip J. Landau
    Florida Bar Number:  0504017

{FT431198;1}

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished

via Notice of Electronic Filing and U.S. Mail this 15th day of October, 2007 to all parties on the

attached Service List.

_/s/ Philip J. Landau_
Philip J. Landau

## SERVICE LIST

David W. Black, Esq.*
7805 S.W. 6th Court
Plantation, FL 33324

Rachel S. Budke, Esq.*
700 Universe Boulevard
Juno Beach, FL 33408

Robert C. Furr, Esq.*
Alvin G. Goldstein, Esq.
2255 Glades Road
Suite 337W
Boca Raton, FL 33431

Eric C. Cotton, Esq.*
3300 Enterprise Parkway
Beachwood, OH 44122

David A. Carter, Esq.*
1900 Glades Road
Suite 401
Boca Raton, FL 33431

Robert L. Jennings, Esq.
311 S.E. 13th Street
Fort Lauderdale, FL 33316

Lawrence H. Meuers, Esq.
5395 Park Central Court
Naples, FL 34109

Scott B. Newman, Esq.*
222 Lakeview Avenue
Suite 1000
West Palm Beach, FL 33401

William C. Price, Esq.
McGuireWoods LLP
625 Liberty Avenue, 23rd Floor
Pittsburgh, PA 15222

Kelly L. Reagan
505 S.Flagler Drive
Suite 600
West Palm Beach, FL 33401

Office of the U.S. Trustee*
51 S.W. 1st Avenue
Suite 1204
Miami, FL 33130

Attorney General United States
950 Pennsylvania Avenue
Suite 4400
Washington, D.C. 20530-0001

Susan B. Sherrill Beard, Esq.
Sr. Bankruptcy Attorney
Securities & Exchange Committee
3475 Lenox Road, Suite 1000
Atlanta, GA 30326-1232

Bunzl South Florida
P.O. Box 402337
Atlanta, GA 30384

Digiview Productions/Idb Factors
Grand Central Station
P.O. Box 4711
New York, NY 10163-4711

James Berning, President
JM Distributing, Inc.
8222 118th Avenue, Suite 665
Largo, FL 33773

Department of Justice
Tax Division
P.O. Box 14198
Washington, D.C. 20044

Securities & Exchange Commission
Bankruptcy Unit
450 Fifth Street
Washington, D.C. 20549

Michael DePaul, President
Regell Produce Corp.
8999 Paver Street
River Grove, IL 60171

Jerika Properties, Inc.
Attn: Alan Waserstein
6001 N.W. 153 Street
Suite 110
Miami Lakes, FL 33014

Sun City Produce
2230 S.W. 2nd Street
Pompano Beach, FL 33069

John Lortie, Esq.
Internal Revenue Service
1000 S. Pine Island Road
Suite 300
Plantation, FL 33324

Internal Revenue Service
P.O. Box 21126
Philadelphia, PA 19114

Securities & Exchange Commission
801 Brickell Avenue
Suite 1800
Miami, FL 33131

Special Assistant U.S. Attorney
District Counsel, IRS
P.O. Box 9 Stop 800
51 S.W. First Avenue, Suite 1114
Miami, FL 33131

Manny Jiminez
Mat-Pac, Inc.
404 Cancelwood Commons
Howell, NJ 07731

Jean Philippe Frag, LLC
551 Fifth Avenue
New York, NY 10176

Miami-Dade County Tax Collector*
c/o Miami-Dade County Paralegal Unit
140 West Flagler Street, Suite 1403
Miami, FL 33130-1575

Sacha Ross, Esq.*
Grimes Goebel Grimes et. al., P.L.
1023 Manatee Avenue West
Bradenton, FL 34205

Lawrence A. Gordich, Esq.
Ruden McClosky
701 Brickell Avenue, Suite 1900
Miami, FL 33131-2336

**\*via Notice of Electronic Filing**

## PLAN TRUST AGREEMENT

This Plan Trust Agreement ("Agreement") is made by Debtor, as defined in the Plan (the "Debtor" or the "Settlor"), and **Francis L. Carter**, as trustee ("Plan Trustee") effective as of the ___ day of October, 2007.

### WITNESSETH:

**WHEREAS**, the United States Bankruptcy Court confirmed the Debtor's Plan of Reorganization ("Plan") under Chapter 11 of the Bankruptcy Code;

**WHEREAS**, the Plan provides for the creation of an irrevocable plan trust for the benefit of the holders of Class 6 Allowed General Unsecured Claims against 99 Cent Stuff, Inc. (as defined in the Plan) (the "Trust Beneficiaries" or "Beneficiaries");

**WHEREAS**, this Agreement is executed in accordance with Treas. Reg. § 301.7701-4(a) and (d) to establish a trust to be known as the "Plan Trust", the sole purpose of which is to facilitate the implementation of the Plan and not to engage in the conduct of an active trade or business;

**WHEREAS**, the corpus of the Plan Trust and all income earned thereon remaining after the satisfaction of all trust expenses and liabilities shall be used solely for the purpose of paying Class 6 Allowed General Unsecured Claims against 99 Cent Stuff, Inc., other than the Allowed General Unsecured Claims of Bank of America, the Allowed General Unsecured Claim of Raymond Zimmerman, and any deficiency claim which has been, or may be, asserted by Sun City in accordance with the Plan; and

**WHEREAS**, the parties to this Agreement desire that the Plan Trust created pursuant to this Agreement qualify as a liquidating trust in accordance with Treas. Regs. § 301.7701-4(d) and that on qualification, the Plan Trust shall be taxed as a grantor trust under and in accordance

with the relevant provisions of the Internal Revenue Code of 1986, as amended (the "Code") and the Treasury Regulations thereunder;

**WHEREAS**, the parties to the Agreement incorporate by reference all definitions found in the Plan and make them a part hereof as if contained herein.

**NOW, THEREFORE**, in consideration of the premises and other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and subject to the terms and conditions of this Agreement and the Plan, the Settlor and Plan Trustee have executed this Agreement for the sole benefit of the Trust Beneficiaries and no other party as follows:

**ARTICLE 1**

**GRANT, ACCEPTANCE, NAME AND DEFINITIONS**

1.1. <u>**Grant**</u>.

i)      The Debtor hereby grants, assigns, transfers, conveys, delivers, delegates and sets over unto the Plan Trustee the Plan Trust Assets in trust, for the benefit of the Trust Beneficiaries, and subject to the terms and provisions set out in this Agreement and in the Plan, including without limitation the provisions of Article VI of the Plan, which are incorporated herein by reference.   Additionally, the Debtor hereby irrevocably grants, assigns, transfers, conveys, delivers, delegates and sets over unto the Plan Trustee all of the authority, rights, powers and duties previously vested in the Debtor under Sections 541, 542, 543, 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code as well as all actions set forth in Article 6.3 of the Plan.  All the assets transferred to the Plan Trustee shall be collectively referred to as the "Trust Estate", when the said assets are not referenced individually.   To the extent that any law, regulation or contractual provision prohibits the transfer of ownership of any of the Trust Estate from the Debtor to the Plan Trust or the Plan Trustee, or if for any reason the Debtor shall retain

or receive at any point any property that is included in or intended under the Plan and this Agreement to be included in the definition of Trust Estate, then the Debtor shall and is hereby deemed to hold such property (and any proceeds or products thereof) in trust for the Trust Beneficiaries, and the Debtor shall promptly notify the Plan Trustee of the existence of such property, and shall promptly take such actions with respect to such property as the Plan Trustee shall direct in writing.  It is intended that the Trust Estate transferred pursuant to this paragraph shall provide the Trust Beneficiaries with distributions on account of their Class 6 Allowed General Unsecured Claims against 99 Cent Stuff, Inc., pursuant to and in accordance with the Plan.

ii)     For tax purposes, the transfer of the Trust Estate will be treated as a deemed transfer to the Trust Beneficiaries followed by a deemed transfer by the Trust Beneficiaries to the Plan Trust, in accordance with Rev. Proc. 94-45, 1994-2 C.B. 684.  The taxation of the initial transfer from the Beneficiaries to the Plan Trust will be guided by the provisions of Sections 61(a)(12), 483, 1001, 1012 and 1274 of the Code.

iii)    The Plan Trustee hereby accepts the Trust Estate and the Plan Trust created hereunder, subject to the terms and provisions set out below and in the Plan on behalf of and for the benefit of the Trust Beneficiaries.

1.2.    **Name**.  The trust created pursuant to the terms hereof shall be known as the 99 Cent Stuff, Inc. Plan Trust (the "Plan Trust").

1.3.    **Certain Terms Defined**.  For all purposes of this Agreement, the capitalized terms used herein shall have the following meanings:

(a) "Agreement" shall mean this Plan Trust Agreement as originally executed or as it may from time to time be amended pursuant to the terms hereof;

(b)     "Bankruptcy Case" or "Case" means the cases of the Debtor.

(c)     "Plan Trust" shall mean the trust established pursuant to the terms and conditions of the Agreement.

(d)     "Plan Trustee" shall mean Francis L. Carter or any successor Plan Trustee.  The appointment of the Plan Trustee is subject to Bankruptcy Court approval.

(e)     "Plan Trust Expense Reserve" means the reserve established for the payment of fees and expenses incurred by the Plan Trustee (together with professionals retained by the Plan Trustee) in accordance with its obligations under the Plan and this Agreement. Any cash remaining in the account at the time of the final distribution shall be distributed to the Beneficiaries in accordance with this Agreement and the Plan.

(f)     "Trust Beneficiaries" or "Beneficiaries" shall mean the holders of Class 6 Allowed General Unsecured Claims against 99 Cent Stuff, Inc, other than the Allowed General Unsecured Claims of Bank of America, the Allowed General Unsecured Claim of Raymond Zimmerman, and any deficiency claim which has been, or may be, asserted by Sun City, as defined and provided for in the Plan;

(g)     "Trust Estate" shall consist of all property that is to vest in the Plan Trust or that is to be assigned to the Plan Trust in accordance with the Plan.  The Trust Estate shall also consist of the products and proceeds of all of the foregoing whether through sale, disposition, judgment or decree in connection therewith.  The Trust Estate shall also include interest or other earnings on any of the foregoing.  The Trust Estate shall not include any assets paid out, distributed or disposed of by the Plan Trustee in accordance with this Agreement or the Plan after the date of any such payment, distribution or disposition.

1.4.    **Other Definitions**.  All capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to them in the Plan.

## ARTICLE 2

## NATURE OF TRANSFER

2.1.    **Purpose of Plan Trust**.  The Plan Trust is created solely to implement the terms of the Plan.  The purposes of the Plan Trust are to manage, conserve and protect the value of the Trust Estate for the benefit of the Beneficiaries, including, but not limited to: (i) collecting and liquidating the Trust Estate; (ii) pursuing those claims and causes of actions vested in the Plan Trust; and (iii) distributing to the Beneficiaries all proceeds from the liquidation of the Trust Estate pursuant to the terms of the Plan.  Under no circumstances shall the Plan Trustee, in his capacity as Plan Trustee, have any power to engage in any trade or business or any other activity except as specifically provided herein or otherwise reasonably necessary and advisable for the orderly liquidation and distribution of the Trust Estate.  The Plan Trustee will make continuing efforts to dispose of the Trust Estate, make timely distributions, and not unduly prolong the duration of the Plan Trust.

2.2.    **Grantor Trust**.  The Plan Trust created by this Agreement is intended: (i) as a trust governed and construed in all respects as a liquidating trust pursuant to Section 301.7701-4(d) of the United States Treasury Regulations and as a grantor trust in favor of the Beneficiaries pursuant to Section 1.671-4(a) thereof, and (ii) to comply with the requirements of a liquidating trust which is a grantor trust, as set forth in Revenue Procedure 94-45, 1994-2 C.B. 684.

2.3.    **Liabilities of the Debtors**.  To the extent of available funds, the Plan Trustee, solely for and on behalf of the Plan Trust, shall utilize all or such part of the Trust Estate as may be necessary to pay any and all Allowed Claims in accordance with the Plan.

2.4.    **Representative of the Debtors**.    The Plan Trustee shall be deemed to be a "representative" of the Debtors' estates within the meaning of 11 U.S.C. § 1123(b)(3)(B).

**ARTICLE 3**

**BENEFICIARIES**

3.1.    **Rights of Beneficiaries**.  Each Beneficiary shall be entitled to participate in the rights and benefits due to a Beneficiary hereunder.  The interest of each Beneficiary in the Plan Trust is declared to be and shall be in all respects personal property of such Beneficiary, and upon the death of an individual Beneficiary, his or her interest shall pass to his or her legal representative and such death shall not terminate the Plan Trust or otherwise affect the validity of this Agreement.  Each Beneficiary shall have the rights with respect to the Trust Estate as are provided by this Agreement and the Plan.  No widower, widow, heir, or devisee of any individual who may be a Beneficiary shall have any right of homestead, inheritance, or of partition, or any other right, statutory or otherwise, in any property whatsoever forming a part of the Trust Estate, but the whole title to all the Trust Estate shall be vested in the Plan Trustee. The sole interest of each Beneficiary shall be the rights and benefits given to such person under the Plan and this Agreement.

3.2.    **Transfer of Interests of Beneficiaries**.  No interest of a Beneficiary may be transferred either by the Beneficiary in person or by a duly authorized agent or attorney, or by the properly appointed legal representative of the Beneficiary except as otherwise permitted by the Agreement and Plan.  In the event of the transfer of the interest of any Beneficiary, as permitted

by this Agreement and Plan, the transferee shall take and hold such interest subject to the terms and provisions of this Agreement, and shall give written notice of such transfer to the Plan Trustee.  The Plan Trust shall not be required to issue certificates or other instruments representing or evidencing the interests of a Beneficiary in the Plan Trust, but nothing contained herein shall prohibit the Plan Trustee from doing so.  The Plan Trustee shall not be liable to any transferee of an interest of a Beneficiary for any distributions provided for hereunder unless such transfer is valid under the terms of the Plan and the order confirming same, and until the Plan Trustee receives written notice of such transfer together with appropriate assignment and transfer documents signed by the Beneficiary.  The Plan Trustee may require a Beneficiary or his or her duly appointed representative to provide affidavits or other certifications satisfactory to the Plan Trustee that attest to the validity of the transfer, including the authority of the transferor Beneficiary or representative to sign the transfer documents.

3.3.    **Beneficiary Information**.  The Plan Trustee may rely upon information relating to each Beneficiary as it appears in records of the Bankruptcy Court.  In the absence of information in Bankruptcy Court records, the Plan Trustee may rely upon information as it appears in records of the Debtor on the date of this Agreement.  A Beneficiary may provide address or other information to the Plan Trust by notifying it in writing.  Upon receipt by the Plan Trustee of appropriate assignment or transfer documents signed by a Beneficiary or his or her duly appointed representative, the Plan Trustee shall record such assignment or transfer on the books and records of the Plan Trust and shall treat such transferee as  a Beneficiary for all purposes hereunder in accordance with such assignment or transfer from and after the date the Plan Trust receives such notice.  Thereafter, the Plan Trust shall have no further liability or obligation to the transferor Beneficiary unless provided otherwise in the assignment or transfer documents.

# ARTICLE 4

## DURATION OF TRUST ESTATE

4.1. **Duration**. The Plan Trust shall remain in existence and continue in full force and effect until all of the following shall have occurred: (i) the Trust Estate has been reduced to cash or the Plan Trustee has determined that it is impractical or not in the best interest of the Beneficiaries of the Plan Trust to reduce Plan Trust property to cash; (ii) all costs, expenses and obligations incurred in administering the Plan Trust have been paid; (iii) the Trust Estate has been distributed to the Beneficiaries in accordance with the Plan; and (iv) the Bankruptcy Court has entered a final decree closing the Bankruptcy Case. If the foregoing events have not occurred within five (5) years after the Confirmation Date (as defined in the Plan), then the Plan Trust shall terminate upon the fifth (5th) anniversary of the Confirmation Date. It is specifically provided, however, that the Bankruptcy Court may extend the term of the Plan Trust for a finite period of time upon a finding that the extension is necessary to the liquidating purpose of the Plan Trust. Each extension of the termination date of the Plan Trust must be approved by the Bankruptcy Court before the termination date passes.

# ARTICLE 5

## ADMINISTRATION OF TRUST ESTATE

5.1. **Payment of Interest to Beneficiaries**. The Plan Trustee shall hold the Trust Estate without provision for, or the payment of interest to, any Beneficiary, except to the extent prescribed under the Plan.

5.2. **Payment of Claims, Expenses and Liabilities and the Reserve Amounts**. The Plan Trustee shall pay from the Trust Estate all claims, expenses, charges, liabilities, and obligations of the Trust Estate, and all liabilities and obligations that the Plan Trustee, on behalf of the Plan

Trust, has specifically assumed and agreed to pay pursuant to this Agreement, together with such transferee liabilities which the Plan Trust may be obligated to pay as transferee of the Trust Estate, including without limitation, interest, taxes, assessments, and public charges of every kind and nature, and the costs, charges, and expenses connected with or arising out of the execution or administration of this Plan Trust, and such other payments and disbursements as are provided in this Agreement or that may be determined to be a proper charge against the Trust Estate by the Plan Trustee or by any court of competent jurisdiction. In addition, the Plan Trustee may make provision out of the Trust Estate for the Disputed Claims Reserve and Plan Trust Expense Reserve to pay present or future claims, expenses and liabilities of the Plan Trust, whether fixed or contingent, known or unknown. The Plan Trust is not permitted to receive or retain cash or cash equivalents in excess of a reasonable amount to meet claims and contingent liabilities (including disputed claims) or to maintain the value of the assets during liquidation.

5.3.    **Reports to Beneficiaries**. As soon as practicable (and in no event more than sixty (60) days) after the end of each year after the Effective Date (as defined in the Plan), and within one hundred twenty (120) days after termination of the Plan Trust, the Plan Trustee shall submit a written report containing the information described below to those Beneficiaries that make a written request for such a report. Such report shall list the assets and liabilities of the Plan Trust, including the Disputed Claims Reserve and Plan Trust Expense Reserve at the end of such year, and the receipts and disbursements of the Plan Trustee for such period. If deemed appropriate by the Plan Trustee, such reports shall be audited or reviewed by the independent public accountants for the Plan Trust.

5.4.    **Federal Income Tax Information**. As soon as practicable after the close of each calendar year, but in no event later than March 15th following the close of the calendar year, the

Plan Trustee shall, if required by law, mail to each Beneficiary of record during such year, a statement showing information sufficient for each Beneficiary to determine its share of income, deductions and credits for federal income tax purposes in accordance with Sections 1.671-4(a) and 1.671-4(b)(3) of the United States Treasury Regulations.

5.5.    **Required Filing**.  The Plan Trustee shall, if required, prepare and file with appropriate state and federal agencies and authorities, all such documents, forms, reports and returns (including, but not limited to, state and federal income tax returns) required by law, as the Plan Trustee shall, with the advice and assistance of professionals engaged by the Plan Trustee, including, but not limited to, legal counsel and accountants, deem necessary, required or appropriate in connection with the creation, existence, operation or termination of the Plan Trust. The Plan Trustee shall, if required, file returns for the Plan Trust as a grantor trust pursuant to Sections 1.671-4(a) and 1.671-4(b)(3)(ii) of the United States Treasury Regulations.

5.6.    **Tax Attributes and Tax Characteristics of the Trust**.  The Beneficiaries of the Plan Trust shall be treated as its grantors and deemed owners.  The Plan Trustee shall, if required, file tax returns for the Plan Trust as a grantor trust pursuant to § 1.671-4(a) or (b) of the United States Treasury Regulations, as appropriate.   Accordingly, all earnings of the Plan Trust, including earnings retained in reserve accounts, if any, will be allocated to the Beneficiaries on an annual basis and the Beneficiaries shall be responsible to report and pay the taxes due on their proportionate share of the Plan Trust income whether or not amounts are actually distributed by the Plan Trustee to the Beneficiaries to pay such taxes.  The value of the assets transferred into the Plan Trust shall be the fair market value of such assets at the time of such transfer.  The assets transferred to the Plan Trust shall be valued consistently by all parties including, but not

limited to, the Debtors and all Beneficiaries and these valuations will be used for federal income tax purposes.

5.7.   **Revenue Ruling Requests**.   The Plan Trustee shall not file a ruling request (in accordance with the procedures set forth in Rev. Proc. 94-45, 1994-2 C.B. 684) with the Internal Revenue Service to confirm the Plan Trust's classification as a liquidating trust as described in Treas. Reg. § 301.7701-4(d).

<h1 style="text-align:center">ARTICLE 6</h1>

<h2 style="text-align:center">DISTRIBUTIONS TO BENEFICIARIES AND RELATED MATTERS</h2>

6.1.   **Allowed Claims**.   The Plan Trustee shall make the Pro Rata distributions to the holders of Class 6 Allowed General Unsecured Claims against 99 Cent Stuff, Inc., pursuant to the Plan. The maximum aggregate distributions to the holders of such Allowed Claims shall be payment in full of the Allowed Claims. The timing of any distributions, except as set forth in the Plan, shall be within the discretion of the Plan Trustee.

6.2.   **Unclaimed Distribution**.   The Plan Trustee shall administer unclaimed property in accordance with the Plan.

6.3.   **Inaccurate Address**.   Distributions shall be governed by paragraph 5.10 of the Plan with respect to inaccurate addresses.

6.4.   **Tax Withholding**.   The Plan Trust may withhold from any distribution any amount that it determines must be withheld under applicable law for taxes payable by the person or entity entitled to the distribution.

6.5.   ***De Minimis* Amount**.   In the event that a distribution on account of an Allowed Claim is less than twenty-five dollars ($25.00), the Plan Trust need not make such de minimis distribution, but may accumulate such distributions and make a distribution to the claimant on a

distribution date when the amount to be distributed equals or exceeds $25.00. If the amount of the final distribution is less than $25.00, then the Plan Trustee shall make the distribution at that time.

**6.6.**   **United States Trustee Fees and Reports**. After the Confirmation Date, the Plan Trustee shall serve on the Office of the United States Trustee a quarterly financial report for each calendar quarter or portion thereof during which the Bankruptcy Case remains open. The quarterly financial report shall include a statement of all disbursements made during the course of the quarter, whether or not pursuant to the Plan.

### ARTICLE 7

### POWERS OF AND LIMITATIONS ON THE PLAN TRUSTEE

**7.1.**   **Limitations on Plan Trustee**. The Plan Trustee shall not do any act or undertake any activity unless he determines, in good faith, that such act or activity is desirable, necessary or appropriate for the management, conservation and protection of the Trust Estate. The investment powers of the Plan Trustee are limited to the powers to invest temporarily cash portions of the Trust Estate in demand and time deposits in banks or savings institutions, or temporary investments such as short-term certificates of deposit or Treasury bills or money market funds. The Plan Trustee shall be restricted to the holding, liquidation and collection of the Trust Estate and the payment and distribution thereof for the purposes set forth in this Agreement and in the Plan, and to the conservation and protection of the Trust Estate and administration thereof in accordance with the provisions of this Agreement and the Plan.

**7.2.**   **Specific Powers of Plan Trustee**. Subject to the limitations set forth herein, the Plan Trustee shall have the following specific powers in addition to any powers granted by applicable law or conferred upon him by any other provision of this Agreement and the Plan, except as may

be considered inconsistent with the Plan, this Agreement, or a trust created in accordance with Treas. Reg. § 301.7701-4(d); provided, however, that enumeration of the following powers shall not be considered in any way to limit or control the power of the Plan Trustee to act as specifically authorized by any other provisions of this Agreement or the Plan and to act in such manner as the Plan Trustee may deem necessary or appropriate to discharge all obligations of or assumed by the Plan Trust or provided herein and to conserve and protect the Trust Estate or to confer on the Beneficiaries the benefits intended to be conferred upon them by this Agreement and the Plan:

(a)     to determine the terms on which the Trust Estate or portions thereof should be sold or disposed of;

(b)     to collect and receive any and all money and other property of whatsoever kind or nature due to or owing or belonging to the Plan Trust and to give full discharge and acquittance therefor;

(c)     pending disposition or distribution, to retain any and all of the Trust Estate regardless of whether any portion thereof is, or may become, unproductive or wasting asset.  The Plan Trustee shall not be under any duty to reinvest such part of the Trust Estate as may be in cash, or as may be converted into cash; nor shall the Plan Trustee be chargeable with interest thereon except to the extent that interest may be paid to the Plan Trust on such cash amounts;

(d)     to retain and set aside such funds out of the Trust Estate as the Plan Trustee shall deem necessary or expedient to pay or provide for the payment of: (i) unpaid claims, liabilities, debts or obligations of the Plan Trust; and (ii) the Plan Trust Expenses Reserve;

(e)      to do and perform any acts or things necessary or appropriate for the management, conservation and protection of the Trust Estate, including acts or things necessary or appropriate to maintain assets held by the Plan Trustee pending disposition thereof or distribution thereof to the Beneficiaries, and in connection therewith, to employ such agents, and to confer upon them such authority as the Plan Trustee may deem expedient, and to pay fees and expenses therefor;

(f)      to cause any investment of the Trust Estate to be registered and held in the name of the Plan Trustee or in the names of a nominee or nominees, or in the names of a nominee or nominees of another entity, without increase or decrease of liability with respect thereto;

(g)      to prepare, file, assert, commence and prosecute, or continue to prosecute in the case of existing actions, any and all litigation causes of action relating to turnover and avoidable transfers under Section 541, 542, 543, 544, 545, 547, 548, 549, 550 or 553 of the Bankruptcy Code or any action set forth in Article 6.4 of the Plan;

(h)      to take such other action, in the name of the Plan Trust if required, as the Plan Trustee may deem necessary or desirable to prosecute causes of action forming a part of the Trust Estate;

(i)      to perform any act authorized, permitted, or required of the Debtors or Plan Trust to prosecute any causes of action relating to or forming a part of the Trust Estate whether in the nature of an approval, consent, demand, or notice thereunder or otherwise;

(j)      to settle or compromise causes of action forming a part of the Trust Estate in the manner deemed appropriate by the Plan Trustee;

(k)    to take all actions for and on behalf of the Debtors, including, but not limited to, the preparation, execution and filing of documents, as the Plan Trustee shall deem necessary, desirable or appropriate in order to complete, conclude and finalize any filing, reporting or other obligations which the Plan Trust may have to any state or federal governmental authority, including, but not limited to, the Internal Revenue Service;

(l)    to enter into such consulting or employment arrangements or otherwise retain such accountants, agents, attorneys, consultants, staff or independent contractors as the Plan Trustee shall deem necessary, desirable and appropriate to enable the Plan Trust to accomplish the purposes enumerated in this Agreement and the Plan;

(m)    to make the distributions provided for in the Plan and Plan Trust;

(n)    the Plan Trustee shall have entire control and management of the Trust Estate. The Plan Trustee may also sell any property comprising the Trust Estate on such terms and at such times and on such conditions as he may think best, and he may execute, acknowledge and record any and all instruments necessary or convenient for the purposes of this Plan Trust.  He may make any and all such contracts and do any and all such things as he deems necessary, desirable or convenient for the maintenance, management and operation of the Plan Trust and Trust Estate, and is authorized to pay any expenses necessary to the conduct and operation of this Plan Trust out of the Trust Estate.

## ARTICLE 8

### CONCERNING THE PLAN TRUSTEE

8.1.    **Generally**.  In performing his duties, the Plan Trustee may rely on information easonably believed by him to be accurate and reliable.

8.2.    **Reliance by Plan Trustee**.  Except as otherwise provided in paragraph 8.1:

(a)    the Plan Trustee may rely and shall be protected in acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document believed by him to be genuine and to have been signed or presented by the proper party or parties; and

(b)    the Plan Trustee may consult with and retain legal counsel (including, but not limited to, retention of his own law firm) and other professionals to be selected by him, and the Plan Trustee shall not be liable for any actions taken or suffered by him in accordance with the advice of such counsel.  The Plan Trustee may also consult with accountants and former consultants or advisors of the Debtor, the Official Unsecured Creditors' Committee, present and former officers, directors and consultants of the Debtors' affiliates or subsidiaries and the Reorganized Debtor, and its present and former officers, directors and consultants.  The fees of such legal counsel and other professionals for the Plan Trustee shall be provided for and paid from the Plan Trust Expense Reserve in accordance with the provisions of the Plan.

8.3.    **Indemnification**.  The Plan Trustee and Plan Trust's attorneys and other agents shall be and hereby are held harmless by and indemnified by the Plan Trust and the Trust Estate for any and all claims, losses, expenses (including attorneys' fees and expenses), liabilities, actions, cause of action, and all fees and expenses related thereto arising out of or in any way related to any claim arising from the administration of the Plan Trust.  The Plan Trustee may contract in such a manner that the Plan Trustee is exempt from personal liability and that liability is limited to the Trust Estate.  The foregoing notwithstanding, the Plan Trustee shall be personally liable to the Plan Trust, Beneficiaries or third parties for bad faith, breach of fiduciary duty, dishonesty, gross negligence, fraud, or other similar acts.  This indemnification obligation also includes costs

and expenses, including attorneys' fees and expenses, incurred to enforce this indemnity provision.

8.4.    **Bond**.    The Plan Trustee shall post a bond, in a form acceptable to the United States Trustee for the Southern District of Florida in an amount no less than $1,000,000.00.  The cost of such bond shall be a cost of administration of the Plan Trust.

## ARTICLE 9

## PERSONS DEALING WITH THE PLAN TRUSTEE

9.1.    **Plan Trustee Not Personally Liable**.    Persons dealing with the Plan Trustee shall look only to the Trust Estate to satisfy any liability incurred by the Plan Trustee to such person in carrying out the terms of this Plan Trust, and the Plan Trustee shall have no personal or individual obligation to satisfy any such liability.

9.2.    **Authority of Plan Trustee**.    Any person dealing with the Plan Trustee shall be fully protected in relying upon the Plan Trustee's certificate signed by the Plan Trustee that such Plan Trustee has authority to take any action under this Agreement.

## ARTICLE 10

## COMPENSATION

10.1.    **Compensation of Plan Trustee**.    The Plan Trustee shall be compensated as specified in Exhibit A.

## ARTICLE 11

## PLAN TRUSTEE AND SUCCESSOR PLAN TRUSTEE

11.1.    **Resignation and Removal**.    The Plan Trustee may: (i) resign and be discharged from the Plan Trust hereby created only by filing an appropriate motion in and obtaining an order of the Bankruptcy Court setting forth the reason therefor; or (ii) be removed by the Trust Beneficiaries

by filing an appropriate motion with and obtaining an order from the Bankruptcy Court directing such removal; provided, however, that the Plan Trustee can only be removed for good cause shown. In the event of a resignation or removal, the Plan Trustee shall continue to perform his duties hereunder until such a time as a successor is appointed unless he is incapable of doing so or the Bankruptcy Court orders otherwise.

11.2. **Appointment of Successor**. Should the Plan Trustee resign or be removed, or die or become incapable of action, a vacancy shall be deemed to exist. In the event of such a vacancy, the Beneficiaries shall have the right to select a successor by consent. The successor Plan Trustee must be approved by the Bankruptcy Court upon proper motion. In the event the Beneficiaries are not able to, or choose not to select a successor, then upon motion to the Bankruptcy Court by any party in interest, the Bankruptcy Court shall select a successor. The compensation, if any, of the successor Plan Trustee shall be as stated in the instrument evidencing such successor Plan Trustee's appointment.

11.3. **Acceptance of Appointment by Successor Plan Trustee**. Each successor Plan Trustee appointed hereunder shall execute an instrument accepting such appointment along with a bond in the amount specified in this Agreement. Thereupon, such successor Plan Trustee shall, without any further act, become vested with all the estates, properties, rights, powers, trust, and duties of his or its predecessor in the Plan Trust hereunder with like effect as if originally named therein; but the prior Plan Trustee shall nevertheless, when requested in writing by the successor Plan Trustee, execute and deliver any instrument or instruments conveying and transferring to such successor Plan Trustee upon the Plan Trust herein expressed, all the estates, properties, rights, powers, and trusts of such prior Plan Trustee, and shall duly assign, transfer, and deliver to such successor Plan Trustee all property and money held by him hereunder. Notwithstanding

the appointment of a successor Plan Trustee, the prior Plan Trustee shall, without limitation, continue to be entitled to indemnity as provided in this Agreement.

## ARTICLE 12

### CONCERNING THE BENEFICIARIES

12.1.    **Limitation on Suits by Beneficiaries**.  No Beneficiary shall have any right by virtue of any provision of this Agreement to institute any action or proceeding at law or in equity against any party upon, under, or with respect to the Trust Estate.

12.2.    **Requirement of Undertaking**.  The Plan Trustee may request any court to require, and any court  may in its discretion require, in any suit for the enforcement of any right or remedy under this Agreement, or in any suit against the Plan Trustee for any action taken or omitted by the Plan Trustee, that the filing party in such suit file with the court an undertaking under which the filing party agrees to pay the Plan Trust's costs of such suit, including, but not limited to, reasonable attorneys' fees and expenses.   Before requiring an undertaking, the court may consider the merit and good faith of the claims or defenses made by such filing litigant.

12.3.    **Beneficiary Consent**.  Wherever "beneficiary consent" is required under this Agreement, such consent shall be deemed to have been met when a majority in number and two-thirds in dollar amount of the Beneficiaries who vote, vote in favor of the relief requested.  For voting purposes, each Beneficiary shall have one vote notwithstanding the number of claims he may have, and the dollar amount attributable to such Beneficiary shall be the dollar amount of the Beneficiary's interest in the Trust Estate as of the date of the vote.

## ARTICLE 13

## AMENDMENTS

13.1.  **Amendments**.  The Plan Trustee may make and execute such declarations amending this Agreement for the purpose of adding any provisions to or changing in any manner or eliminating any of the provisions of this Agreement or amendments hereto; provided, however, that no such amendment shall permit the Plan Trustee to act in any manner that is inconsistent with the Plan, or to affect the Beneficiaries' rights to receive their share of any distributions under this Agreement and the Plan.

13.2.  **Notice and Effect of Amendment**.  Promptly after the execution by the Plan Trustee of any declaration of amendment permitted by and pursuant to Article 13.1 hereof, the Plan Trustee shall give notice of the substance of such amendment to: (i) the Beneficiaries who are the holders of the twenty largest allowed unsecured claims; (ii) all parties that filed requests for notice or notices of appearance in the Bankruptcy Case; and (iii) all Beneficiaries who request in writing a copy of such amendments.  Upon the execution of any such declaration of amendment by the Plan Trustee, this Agreement shall be deemed to be modified and amended in accordance therewith and the respective rights, limitations of rights, obligations, duties and immunities of the Plan Trustee and the Beneficiaries under this Agreement shall thereafter be determined, exercised and enforced hereunder subject in all respects to such modification and amendment.

## ARTICLE 14

## MISCELLANEOUS PROVISIONS

14.1.  **Further Assurances**.  The Debtor and Plan Trustee shall promptly execute and deliver such further instruments and do such further acts as may be necessary or proper to more effectively transfer to the Plan Trustee any portion of the Trust Estate intended to be conveyed

pursuant to the Plan and this Agreement and to otherwise carry out the intentions of this Agreement and Plan.

14.2. **Retention of Jurisdiction**. The Bankruptcy Court shall retain jurisdiction over this Agreement and the Plan Trust established hereby as set forth in the Plan, and concerning matters relating to, without limitation, the enforcement, modification and interpretation of its provisions, determining all disputes with respect to this Agreement, approving successor Plan Trustees, or appointing same in accordance with this Agreement.

14.3. **Filing Documents**. This Agreement shall be filed or recorded in such offices as the Plan Trustee may determine to be necessary or desirable. A copy of this Agreement and all amendments shall be available at the Plan Trustee's office during regular business hours for inspection by any Beneficiary or his duly authorized representative. The Plan Trustee shall file or record any amendment of this Agreement in the same places where the original Agreement is filed or recorded. The Plan Trustee shall file or record any instrument which relates to any change of address of the office of the Plan Trustee in the same places where the original Agreement is filed or recorded.

14.4. **Intention of Parties to Establish Trust**. This Agreement is not intended to create and shall not be interpreted as creating an association, partnership, or joint venture of any kind.

14.5. **Governing Law**. This Agreement shall be governed and construed in accordance with the laws of the State of Florida, without giving effect to the principles of conflicts of law.

14.6. **Severability**. In the event any provision of this Agreement or the application thereof to any person or circumstances shall be finally determined by a court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Agreement, or the application of such provision to persons or circumstances other than those as to which it is held invalid or

unenforceable, shall not be affected thereby, and each provision of this Agreement shall be valid and enforced to the fullest extent permitted by law.

14.7. **No Assignment**. Except as otherwise provided herein, the obligations, duties or rights of the Plan Trustee under this Agreement shall not be delegable or assignable, voluntarily, involuntarily or by operation of law, and any such attempted assignment shall be void.

14.8. **Calendar Year**. The Plan Trust will utilize the calendar year for tax and financial accounting purposes.

14.9. **Inconsistency With Plan**. In the event of any inconsistency between the provisions of the Plan and this Agreement, the terms of the Plan shall govern.

14.10. **Effectiveness**. This Agreement shall become effective on the Effective Date (defined in the Plan).

14.11. **Notices**. Any notice or other communication hereunder shall be deemed to have been sufficiently given, for all purposes, three days after deposit, postage prepaid, in the U.S. Mail and addressed to a Beneficiary at his address as shown in the records of the Plan Trustee, and addressed to the Plan Trustee at: Francis L. Carter, One Southeast Third Avenue, 25th Floor, Miami, Florida 33131, with a copy to Philip J. Landau, Esq., 350 East Las Olas Blvd., Suite 1600, Fort Lauderdale, Florida 33301, except that notice of change of address shall be effective only upon receipt thereof.

14.12. **Consent to Jurisdiction**. Each of the parties hereto, and each Beneficiary by its acceptance of the benefits of the Plan Trust created hereunder: (i) consents and submits to the jurisdiction of the federal courts of the United States for the Southern District of Florida, for all purposes concerning this Agreement, including, without limitation, any action or proceeding

instituted for the enforcement of any right, remedy, obligation or liability arising under or by reason of this Agreement; and (ii) consents and submits to venue in West Palm Beach, Florida.

14.13. **Waiver of Jury Trial**. **ANY AND ALL RIGHT TO TRAIL BY JURY IS HEREBY WAIVED, AND THERE SHALL BE NO RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.**

14.14. **Counterparts**. This Agreement may be executed in any number of counterparts, each of which shall be an original, but such counterparts shall together constitute but one and the same instrument.

**IN WITNESS WHEREOF**, the parties have caused this Agreement to be signed and acknowledged as of the day set forth in the opening paragraph hereof.

**DEBTOR**

**99 CENT STUFF, INC.**


By:_____

      Raymond Zimmerman, Chief Executive Officer


**PLAN TRUSTEE**


By:    _____

      Francis L. Carter

**EXHIBIT A**

## PLAN TRUSTEE COMPENSATION AGREEMENT

## PLAN TRUSTEE COMPENSATION AGREEMENT

The following sets forth the terms and conditions under which Francis L. Carter will act as Plan Trustee under the Debtor's Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (the "Plan").

1.      The services to be provided by the Plan Trustee will be administrative, business and other functions required under the Plan and Plan Trust.

2.      On the Effective Date, Francis L. Carter (the "Plan Trustee") will become the Plan Trustee, as set forth in the Plan.

3.      The Plan Trustee shall be compensated based upon disbursements made from and pursuant to the Plan Trust and shall be entitled to a commission of five (5%) percent on all such disbursements.   In addition, should the Plan Trustee be required to utilize staffing and administrative services, the Plan Trustee will be compensated on an hourly basis at the rate of $125 per hour, plus reimbursement of out-of-pocket expenses.   The Plan Trustee will also be entitled to reasonable fees and expenses of professionals retained by the Plan Trustee to enable the Plan Trustee to accomplish the purposes set forth in the Plan and Plan Trustee Agreement. The estates will not be charged for, and it will be the full responsibility of the Plan Trustee to provide for its own office rent and any other overhead expenses such as normal telephone service and office supplies.   The estates will continue to be responsible for professional fees including, without limitation, Debtors' counsel, Committee counsel and related services to the estate, and for reasonable out-of-pocket business or travel expenses, costs relating thereto, long-distance telephone charges, postage, overnight mail service and photocopy charges, all at reasonable rates to be disclosed to the Committee and agreed upon as to reasonableness (the "Other Fees").

Payment of the fees and expenses of the Plan Trustee and the Other Fees shall be made in accordance with the procedures set forth in Section 6.4(c) of the Plan.

4.      The Plan Trustee shall not be required to devote his time exclusively to the affairs of the Plan Trust.  The Plan Trustee will, however, make himself reasonably available for the conduct of the affairs of the Plan Trust and it will devote such time as is reasonably necessary to the affairs of the Plan Trust.

5.      In the event of a conflict between the terms of this Plan Trustee Compensation Agreement and the terms of the Plan Trust, the terms of the Plan Trust shall govern.

6.      The duration of this Plan Trustee Compensation Agreement shall run concurrently with the duration of the Plan Trust.

IN WITNESS WHEREOF, this Plan Trustee Compensation Agreement has been executed as of October ____, 2007 as indicated below:

On behalf of the Plan Trustee:

By:_____
       Francis L. Carter

On Behalf of the Debtor:

By:_____
       Alvin Goldstein, Esq., its Counsel

On Behalf of the Official Committee of Unsecured Creditors:

By:_____
       Philip J. Landau, Esq., its Counsel